FILED
2019 Dec-19 AM 10:24
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **TARGET MEDIA PARTNERS and ED LEADER,** ) <br> ) <br> Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> **SPECIALTY MARKETING CORPORATION,** ) <br> ) <br> Defendant. ) | Case No. 1:14-CV-00865-KOB |

## **MEMORANDUM OPINION**

This matter comes before the court on Defendant Specialty Marketing Corporation's motion for summary judgment regarding Plaintiff Ed Leader's defamation claim. (Doc. 61.) Because the allegedly defamatory statement is true, the court will GRANT Specialty Marketing's motion for summary judgment.

I.  **Facts and Procedural History**

Plaintiff Target Media Partners owns several companies that publish and distribute free magazines and newspapers for the trucking industry. During the early- to mid-2000s, Mr. Leader worked for Target Media as head of the trucking division and was responsible for soliciting advertisements for placement in the company's various publications. Organizations that hire truck drivers purchase the lion's share of advertisements in Target Media's publications. Defendant Specialty Marketing Corporation publishes throughout the Southeastern United States a free magazine of its own called *Truck Market News*.

In 2002, Target Media contractually agreed to distribute and display Specialty Marketing's *Truck Market News* each month at truck stops, rest stops, and similar locations

frequented by truck drivers. In 2007, after discovering that Target Media was apparently discarding *Truck Market News* copies instead of distributing and displaying them, Specialty Marketing sued Target Media in Alabama state court, alleging breach of contract and fraud. In 2010, the trial court found Target Media liable for $2.36 million in damages. A lengthy appeals process—including an opinion by the State Supreme Court and a denial of certiorari by the United States Supreme Court—upheld Specialty Marketing's damages. *Target Media Partners Operating Co., L.L.C. v. Specialty Marketing Corp.*, 177 So. 3d 843 (Ala. 2013); *cert. denied, Target Media Partners Operating Co. LLC v. Specialty Mktg. Corp.*, 135 S. Ct. 1702 (2015). More than five years after the Alabama Supreme Court upheld Specialty Marketing's award, Mr. Leader still owes Specialty Marketing $671,200, plus interest, in unsatisfied damages. (Doc. 61-1 at 3; Doc. 63 at 2.)

In March of 2014, during the appeals process, Specialty Marketing mailed packages to at least two of Target Media's advertising clients. Included in each package was a cover letter. The last paragraph of each letter, composed by Specialty Marketing's president, stated:

> It is my belief that you and everyone else that has any business or personal dealings with Target Media Partners, their owners and officers, need to know of this documented, trail [*sic*] proven fraud by them. All of which has been upheld by the Alabama Supreme Court. Further, it is my belief that many others have been and continue to be, victims of this fraud.

Based on this statement, Target Media and Mr. Leader filed a defamation suit against Specialty Marketing on May 8, 2014. (Doc. 1.) In November of 2015, the Magistrate Judge assigned to the case recommended dismissing the suit for lack of subject-matter jurisdiction based on the *Rooker-Feldman* doctrine because Target Media's claims were "inextricably intertwined" with the underlying fraud and breach-of-contract case in state court. (Doc. 35.) This court adopted the report and recommendation and dismissed the case because the *Rooker-*

*Feldman* doctrine precluded the court's subject-matter jurisdiction over Target Media's claims. *Target Media Partners v. Specialty Mktg. Corp.*, No. 1:14-cv-00865-KOB, 2015 U.S. Dist. LEXIS 167397, at *4 (N.D. Ala. Dec. 15, 2015).

On appeal, the Eleventh Circuit considered the issue of "whether the *Rooker-Feldman* doctrine can bar a federal suit regarding events occurring long after the entry of a state court decision." *Target Media Partners v. Specialty Mktg. Corp.*, 881 F.3d 1279, 1281 (11th Cir. 2018). The Eleventh Circuit explained that the *Rooker-Feldman* doctrine is a jurisdiction-narrowing canon that applies "where a party in effect seeks to take an appeal of an unfavorable state-court decision" and "bars only that class of cases in which federal litigants seek reversal of state court decisions." *Id.* at 1285 (citation omitted).

In this case, the Eleventh Circuit held that the *Rooker-Feldman* doctrine was inapplicable for two reasons. First, Specialty Marketing's fraud and breach of contract claims presented distinct legal issues from Target Media's defamation claim. *Id.* at 1287. And second, the temporal sequence categorically precluded the doctrine because the Alabama jury returned a verdict against Target Media in 2010, and Specialty Marketing did not send the allegedly defamatory letter until 2014. *Id.* The court concluded that an "allegedly tortious act occurring long after the state court rendered its judgment cannot be barred by *Rooker-Feldman* because there was no opportunity to complain about the allegedly injurious act in the state court proceedings." *Id.* The Eleventh Circuit declined to consider the merits of Target Media's defamation claim and remanded the case to this court. *Id.* at 1289.

Once the case returned to this court, Plaintiff Target Media moved to dismiss itself from the case. (Doc. 58.) On February 26, 2019, the court granted the motion and dismissed Target Media's claim against Specialty Marketing with prejudice, leaving only Mr. Leader's defamation

3

claim against Specialty Marketing. (Doc. 60.) Specialty Marketing filed the instant motion on March 3, 2019 (Doc. 61), and both parties provided briefs to the court regarding Specialty Media's motion for summary judgment. (Docs. 63, 64.)

**II. Standard of Review**

A district court reviewing a motion for summary judgment under Fed. R. Civ. P. 56 must consider whether any genuine issues of material fact exist, and, if not, whether the moving party is entitled to judgment as a matter of law. The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56).

The court must refrain from weighing the evidence and making credibility determinations, because these decisions fall within the province of the jury. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). All evidence and inferences drawn from the underlying facts must be viewed in the light most favorable to the non-moving party. *See Graham v. State Farm Mut. Ins.*, 193 F.3d 1274, 1282 (11th Cir. 1999).

**III. Analysis**

Despite the lengthy and convoluted procedural history of this case, the single issue currently before the court is extraordinarily simple: whether the phrase "continue to be victims of this fraud" constitutes a false and defamatory statement under Alabama law.

A successful claim for defamation in Alabama requires four elements: "1) a false and defamatory statement concerning the plaintiff; 2) an unprivileged communication of that

4

statement to a third party; 3) fault amounting at least to negligence on the part of the defendant; and 4) either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication of the statement." *Dolgencorp, LLC v. Spence*, 224 So. 3d 173, 186 (Ala. 2016).

The parties in this case contest only the first element—that of falsity and defamatory meaning. Whether a statement is reasonably capable of a defamatory meaning is a question of law for the court to decide. *Camp v. Yeager*, 601 So. 2d 924, 926 (Ala. 1992). "If the communication is not reasonably capable of a defamatory meaning, there is no issue of fact, and summary judgment is proper." *Harris v. Sch. Annual Pub. Co.*, 466 So. 2d 963, 964–65 (Ala. 1985). When analyzing whether a statement is defamatory, the court considers the "meaning which would be ascribed to the language by a reader or listener of ordinary or average intelligence, or by a common mind." *Loveless v. Graddick*, 325 So. 2d 137, 142 (Ala. 1975) (quotations omitted). If the ordinary, common mind would interpret the contested statement in a way that "harm[s] the reputation of [the plaintiff] as to lower him in the estimation of the community or to deter third persons from associating or dealing with him," then the statement conveys a defamatory meaning and is actionable. *Harris*, 466 So. 2d at 964.

But even if a statement is facially defamatory, "[i]t is well established in Alabama that in an action alleging defamation, truth is a complete and absolute defense." *Battles v. Ford Motor Credit Co.*, 597 So. 2d 688, 692 (Ala. 1992). *See also Sanders v. Smitherman*, 776 So. 2d 68, 72 (Ala. 2000) ("[T]ruth is a complete bar to a defamation action.").

In this case, Mr. Leader focuses on the phrase "it is my belief that many others have been and continue to be, victims of this fraud." He asserts that this statement "accuses Target Media Partners and its 'owners and officers' of continuing to defraud its customers." (Doc. 63 at 5.) But

5

this statement, on its face, does not impute any ongoing behavior to Target Media. It merely articulates, in the passive voice, that certain entities were and are victims of Target Media's fraud. These victims necessarily include not only Specialty Marketing, but every entity that purchased advertisements in Specialty Marketing's magazines that Target Media threw away. *See Target Media Partners Operating Co., LLC v. Specialty Mktg. Corp.*, 177 So. 3d 843, 848 (Ala. 2013) (describing the types of companies that purchase advertising space in Specialty Marketing's magazines.) More than seven years of litigation and failed appeals, coupled with Target Media's failure to pay damages awarded to Specialty Marketing, proved multiple entities' ongoing "victimhood" within any conceivably reasonable understanding of the term.

Because the allegedly libelous statement is true, and because truth is a complete defense to defamation, the court finds that Specialty Marketing's two cover letters are not defamatory.

### IV. Conclusion

For the reasons explained above, the court finds that Specialty Marketing did not defame Mr. Leader. Because no genuine issues of material fact remain in this case, the court will **GRANT** Specialty Marketing's motion for summary judgment (Doc. 61.) and enter a separate order consistent with this memorandum opinion.

**DONE** and **ORDERED** this 19th day of December, 2019.

_____
**KARON OWEN BOWDRE**
CHIEF UNITED STATES DISTRICT JUDGE